1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEXANDRIA REAL ESTATE EQUITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> RUNLABS (UK) LIMITED, et al., <br><br> Defendants. | Case No. 18-CV-07517-LHK <br><br> **ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE** <br><br> Re: Dkt. No. 23 |

Plaintiff Alexandria Real Estate Equities, Inc. brings the instant suit against RUNLABS (UK) Limited ("RUNLABS UK"), RUNLABS (Ireland) Limited ("RUNLABS Ireland"), and Steven Marcus ("Marcus") (collectively, "Defendants"). The suit primarily concerns Defendants' allegedly illegal use of Plaintiff's trademark. Before the Court is Defendants' motion to dismiss the first amended complaint. ECF No. 23. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS the motion to dismiss without prejudice.

## I.     BACKGROUND

### A.  Factual Background

Plaintiff is a publicly traded real estate trust and "prominent developer and operator of

commercial real estate properties to companies in the academic, scientific, medical, research/development, and technology fields." ECF No. 21 (first amended complaint, or "FAC") at ¶ 2. Plaintiff owns a variety a trademark registrations, including for its name "Alexandria," its lighthouse logo, and the phrase "landlord of choice." *Id.* at ¶ 25.

Defendant RUNLABS UK is "a private limited company established under the laws of the United Kingdom, with its principal place of business . . . [in] London, United Kingdom." *Id.* at ¶ 5. Defendant RUNLABS Ireland is a "private limited company established under the laws of Ireland, with its principal place of business . . . [in] Dublin, Ireland. *Id.* at ¶ 6. The last defendant, Steven Marcus, is a United States citizen residing in London, United Kingdom. *Id.* at ¶ 7. "Steven Marcus is the Founder and CEO of RUNLABS . . . ." *Id.* Defendant Steven Marcus is related to Plaintiff's founder and chairman, Joel Marcus. *Id.* at ¶ 20.

Defendants "advertise collaborative life science and technology campuses incorporating turnkey laboratory and office facilities specifically geared for early stage life science and biotech companies and entrepreneurs." *Id.* at ¶ 3. Thus, Plaintiff alleges that Defendants offer "services identical to those [Plaintiff] has marketed and provided to its client tenants for decades." *Id.* However, at this time, RUNLABS UK and RUNLABS Ireland are "newly formed entities that have not, to date, operated any laboratory facility or conducted any business beyond promoting Defendants' intended services to attract clients and raise funds." *Id.* at ¶ 27.

On or about November 27, 2018, Plaintiff became aware that Defendants were allegedly using Plaintiff's name and trademarks to promote Defendants' services to a venture capital firm. *Id.* at ¶ 28. Specifically, Plaintiff are aware of only one email and an attached presentation sent to "three principals based in the Palo Alto and New York offices [of Venrock,] a prominent venture capital fund and investor in Alexandria." *Id.*; see also ECF No. 1-3 at 1.[1] However, "upon

---

[1] Plaintiff included the email and attached presentation as exhibits to Plaintiff's original complaint against Defendants. ECF Nos. 1-2, 1-3. However, Plaintiff neglected to include the email and attached presentation as exhibits to the FAC. Nonetheless, the Court may still consider the email and presentation attached to the original complaint as part of the Court's analysis. The "court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests

information and belief, Defendants sent many such communications to those in the start-up, life sciences, and technology communities in Northern California in order to attract clients and raise funds." *Id.*

From reviewing the one email and attached presentation sent to Venrock, Plaintiff alleges that the email and attached presentation contain unauthorized uses of Plaintiff's trademarks. *Id.* at ¶ 30. Specifically, the email made the following allegedly false or misleading statements:

- "RUNLABS is creating the world's first and only flexible urban lab platform – providing critical infrastructure and community to life sciences companies . . . ."

- "*We* are currently raising EUR 50 million growth round for groundbreaking life science projects in major gateway cities – Paris and London – with a clear plan to go global, including the US."

- "RUNLABS is a revolution in life science, sprung from Alexandria (www.are.com – NYSE: ARE), growing the world's first and only network of flexible labs enabling life science breakthroughs"

- "Alexandria [*is*] on CNBC . . . ."

*Id.* at ¶ 26.

Moreover, the attached presentation "is also replete with unauthorized uses of the Alexandria Trademarks, false statements regarding RUNLABS' formation, offering and relationship with Alexandria, and statements misleadingly suggesting an affiliation, sponsorship, or endorsement of RUNLABS by Alexandria." *Id.* at ¶ 35.

---

an entitlement to relief, as required under *Iqbal.*" *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010).

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE

For example, the below slide is from the attached presentation and "features photographs of Alexandria properties and unauthorized references to Alexandria and its registered LANDLORD OF CHOICE trademark." *Id.* at ¶ 36.

**RUNLABS** *Mission – 25 years + Evolution*

*Labs 1.0* – self-owned and operated, out of town, 'walled garden'

- Capital inefficient
- Disconnected
- Pre-Alexandria

 

*Labs 2.0* – suburban clusters, Alexandria as 'landlord of choice'

- Improved efficiency
- Clusters forming
- Alexandria's early evolution

 

*Labs 3.0* – urban innovation clusters, concentration = collaboration

- Present day Alexandria RE
- Dominant market leader, core urban cluster markets (US)

 

November 2018 · STRICTLY CONFIDENTIAL – VENROCK                    4

### B. Procedural History

On December 13, 2018, Plaintiff initiated suit by filing a complaint. ECF No. 1. On January 8. 2019, Defendants filed a motion to dismiss for lack of jurisdiction. On January 22, 2019, Plaintiff filed a first amended complaint ("FAC"). ECF No. 21. Thus, on January 23, the Court denied as moot Defendants' motion to dismiss for lack of jurisdiction. ECF No. 22.

On January 24, 2019, Defendants filed the instant motion to dismiss the FAC. ECF No. 23 ("Mot."). On February 7, 2019, Plaintiff filed an opposition. ECF No. 30 ("Opp."). On February 14, 2019, Defendants filed a reply. ECF No. 31 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)).

### B. Motion to Dismiss under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

5

the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Plaintiff brings 4 causes of action: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under 15 U.S.C. § 1125; (3) false advertising under 15 U.S.C. § 1125(a); and (4) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* FAC at ¶¶ 55-89.

As a threshold matter, Defendants argue that they are not subject to this Court's personal jurisdiction. Defendants also argue that each of Plaintiff's causes of action should be dismissed for failure to state a claim. The Court finds the personal jurisdiction argument dispositive, so the Court need not address Defendants' other arguments. The Court first addresses personal jurisdiction, then addresses Defendants' request for judicial notice.

6

### A. Personal Jurisdiction

Defendants argue that they are not subject to either general jurisdiction or specific jurisdiction because RUNLABS UK and RUNLABS Ireland ("Corporate Defendants") are incorporated and headquartered overseas, and because the corporate Defendants did not specifically target California in their communications. Mot. at 12. Defendants also argue that there is no general or specific jurisdiction over Steven Marcus ("Marcus") because Marcus resides in London, and Marcus did not target California in his communications. *Id.* at 13.

Plaintiff does not argue that the Court has general jurisdiction over Defendants. Opp. at 5. Rather, Plaintiff only addresses specific jurisdiction and argues that Defendants have sufficient minimum contacts with California because Defendants purposefully directed infringing and misleading communications into the state; Plaintiff's claims arise out of Defendants' contacts with California; and exercising jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. *Id.* at 5-10.

First, to determine the propriety of asserting personal jurisdiction over a defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate

7

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider "evidence presented in affidavits to assist it in its determination." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). The Court first discusses general jurisdiction, then turns to specific jurisdiction.

### 1. General Jurisdiction

General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801. "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[matic] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). The Court first addresses whether the Court may exercise general jurisdiction over Corporate Defendants, then over Marcus.

#### a. General Jurisdiction over Corporate Defendants

Courts have rejected the notion that "general jurisdiction is appropriate whenever a

8

corporation engages in a substantial, continuous, and systematic course of business in a state," because "[o]nly in an exceptional case will general jurisdiction be available" other than where a business is incorporated or has its principal place of business. *Martinez*, 764 F.3d at 1070. According to the FAC, RUNLABS Ireland is established under Irish law, and has its principal place of business in Dublin, Ireland. FAC at ¶ 6. RUNLABS UK is established under the laws of the United Kingdom, and has its principal place of business in London, United Kingdom. *Id.* at ¶ 5. There are no allegations that the Corporate Defendants have any ties to California. Neither one of the Corporate Defendants is incorporated, or has its principal place of business, in California. Indeed, Marcus' declaration in support of the motion to dismiss discloses that "RUNLABS does not conduct business in the US. It has no officers, directors, or employees in the United States, no operations in the United States, no offices or property in the United States, no customers in the United States, no suppliers in the United States, and no bank accounts in the United States." ECF No. 23-1 ("Marcus Decl.") at ¶ 7. Therefore, the Corporate Defendants are not subject to the Court's general jurisdiction.

> b. General Jurisdiction over Marcus

The Court may exercise general jurisdiction over a defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Additionally, general jurisdiction over a nonresident exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. The FAC concedes that Marcus resides in London, United Kingdom. *Id.* at ¶ 7. The FAC does not allege that Marcus is physically present in California, nor does it allege that Marcus' activities in California are of a continuous and systematic nature that would support a finding of general jurisdiction. Indeed, the FAC is silent as to whether Marcus has any ties to California, other than allegedly playing a role in sending the email and presentation to Venrock, the venture capital firm with offices in California and New York. *Id.* at ¶ 28. Accordingly, Marcus is not subject to this Court's general jurisdiction. The Court next turns to specific jurisdiction.

9

### 2. Specific Jurisdiction

For specific personal jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.* The Court first considers specific jurisdiction over the Corporate Defendants, and then specific jurisdiction over Marcus.

#### a. Specific Jurisdiction over Corporate Defendants

The first prong of the Ninth Circuit's three-prong test for personal jurisdiction requires that the defendant either *purposefully directed* its activities at residents of the forum *or purposefully availed* itself of the privilege of doing business in the forum. This is because under Ninth Circuit law, "we apply different purposeful availment tests to contract and tort cases." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

Under Ninth Circuit precedents, "the purposeful direction . . . requirement for specific jurisdiction is analyzed in intentional tort cases under the . . . test derived from *Calder v. Jones* . . . ." *Dole Food Co.*, 303 F.3d at 1111. As a result, the Ninth Circuit applies the purposeful direction test to trademark cases because the Ninth Circuit has found that trademark cases are "akin to a tort case." *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. App'x 502, 509 (9th Cir. 2018); *see also, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1232-33 (N.D. Cal. 2014) ("For trademark infringement actions, the Ninth Circuit requires a showing of purposeful direction.").

Likewise, courts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL. *See, e.g.*, *Miller v. S&S Hay Co.*, 2013 WL 3212494, at *2 (E.D.

Cal. June 24, 2013) (examining whether defendant "purposefully directs his activities at the forum").

To establish purposeful direction, a plaintiff must satisfy a 3-prong test from the United States Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). "Failing to sufficiently plead any one of these three elements [from *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010)); *see also Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d 797, 806-07 (N.D. Cal. 2014) ("Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction."); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (same). Next, the Court analyzes each part of the 3-prong *Calder* test as applied to Corporate Defendants.

### i.  Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual, physical act in the real world.").

Courts have found that sending an email, which is what took place in the instant case, is an intentional act. *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067, 1069 (9th Cir. 2017) (sending an email newsletter constituted an intentional act); *Mireskandari v. Mayne*, 2016 WL 1165896, at *6 (C.D. Cal. Mar. 23, 2016) ("Calling and sending an email to [plaintiff's] doctor in California and calling [plaintiff's] counsel in California are intentional acts."); *Rashidi v. Veritiss, LLC*, 2016 WL 5219448, at *5 (C.D. Cal. Sept. 19, 2016) ("Mission Essential's email to Rashidi was intentional.").

11

According to the presentation that was attached to the email sent to Venrock, the venture capital firm, the presentation was prepared by RUNLABS Ireland. ECF No. 1-3 at 24. Thus, upon reviewing the email and the attached presentation, it appears that RUNLABS UK had nothing to do with the communication with Venrock. As described above, RUNLABS Ireland and RUNLABS UK are different corporate entities. "The law allows corporations to organize for the purpose of isolating liability of related corporate entities. Only in unusual circumstances will the law permit a parent corporation to held either directly or indirectly liable for the acts of its subsidiary." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004) (internal citation omitted). Even assuming *arguendo* that one of the RUNLABS corporate entities is the other's subsidiary, it "is a general principle of corporate law deeply ingrained in our legal system that a corporation is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 68 (1998).

Thus, the Court finds that RUNLABS Ireland has committed an intentional act by sending the email and presentation to Venrock principals. However, there is no evidence that RUNLABS UK committed an intentional act. As aforementioned, "[f]ailing to sufficiently plead any one of these three elements [from *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert*, 68 F. Supp. 3d at 1163 (citing *Brayton Purcell LLP*, 606 F.3d at 1128-29 (9th Cir. 2010)); *see also Michael*, 65 F. Supp. 3d at 806-07 ("Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction."); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (same).

Therefore, the Court concludes that there is no personal jurisdiction over RUNLABS UK. The Court GRANTS Defendants' motion to dismiss RUNLABS UK from this case for lack of personal jurisdiction. Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

As to RUNLABS Ireland, the Court next discusses the second part of the *Calder* test: whether "the defendant's act was expressly aimed at the forum state." *Dole Food Co.*, 303 F.3d at

12

1111.

ii. Express Aiming

"Express aiming is an ill-defined concept that we have taken to mean 'something more' than 'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.'" *Axiom Foods*, 874 F.3d at 1070 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Mitchell v. Berwyn Partners, Inc.*, 2018 WL 3328220, at *5 (N.D. Cal. July 6, 2018) (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017)). "Mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278.

In *Walden*, which the United States Supreme Court decided in 2014, a police officer at the airport in Atlanta confiscated money from two Nevada-bound passengers. 571 U.S. at 279-80. The United States Supreme Court held that the police officer's knowledge that his actions would cause harm to the plaintiffs in Nevada was not enough for a court in Nevada to exercise personal jurisdiction over the police officer. *Id.* at 289. The United States Supreme Court stressed that personal jurisdiction arises out of a defendant's own contacts with the forum state, not out of a plaintiff's or third party's contacts with the forum state. *Id.* at 285. "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Although the United States Supreme Court explicitly acknowledged that the facts of *Walden* "d[id] not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State," *id.* at 290 n.9, the Ninth Circuit in *Axiom Foods* applied *Walden* to analyze whether emails sent to recipients in a forum state, without more, conferred personal jurisdiction.

13

*Axiom Foods* involved the distribution of an email newsletter that allegedly violated several trademarks to 343 email recipients, 55 of whom had companies in California and 10 of whom were physically located in California. The Ninth Circuit first rejected as too attenuated the fact that 55 recipients had companies in California, particularly where there was no information about the residence of those recipients or the legal or operational relationships between those recipients and their companies. 874 F.3d at 1070. Focusing on the 10 recipients who were physically located in California, the Ninth Circuit held that "[i]t can hardly be said that California was the focal point both of the newsletter and of the harm suffered." *Id.* at 1070-71 (internal quotation marks and alterations omitted). The Ninth Circuit stressed that sending one newsletter to a maximum of 10 recipients located in California, in a market where the defendant had no sales or clients, "barely connected [the defendant] to California residents, much less to California itself." *Id.* at 1071.

*Axiom Foods* is highly analogous to the instant case. Here, an email that allegedly infringed Plaintiff's trademarks was sent to "three principals based in the Palo Alto and New York offices of [Venrock,] a prominent venture capital fund and investor in Alexandria." FAC at ¶ 28. This is akin to *Axiom Foods*, in which the defendant sent hundreds of emails that allegedly violated the *Axiom Foods'* plaintiff's trademarks. 874 F.3d at 1070.

Here, Plaintiff is only aware of *one* such email that allegedly infringes Plaintiff's trademarks, though Plaintiff alleges that upon information and belief, "Defendants sent many such communications to those in the start-up, life sciences, and technology communities in Northern California." FAC at ¶ 28. However, the affidavit of Defendant Steven Marcus states that "[t]he communications about which Plaintiff complains were created in and sent from the European Union. These targeted investor communications were distributed on an *exceptionally limited basis*, and *principally in the European Union*." Marcus Decl. at ¶ 8 (emphasis added). "[F]or purposes of personal jurisdiction, we may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enterps., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992); *see also Mavrix Photo, Inc.*, 647 F.3d at 1223 (holding that for purposes of personal

14

United States District Court
Northern District of California

jurisdiction, "we may not assume the truth of allegations in a pleading which are contradicted by affidavit"). Plaintiff's allegation that Defendant sent "*many such communications* to those in the start-up, life sciences, and technology communities in Northern California," FAC at ¶ 28, is cast into doubt by Marcus' declaration, which disclosed that the emails were sent to an *extremely limited number of individuals* mainly in the European Union, Marcus Decl. at ¶ 8. Therefore, this Court need not presume the truth of the allegation that Defendants sent "*many*" infringing emails to Northern Californian recipients. Thus, the only remaining allegation regarding the recipients of the purportedly infringing email and attached presentation is that three principals of Venrock, a venture capital firm based in Palo Alto and New York, received the email and attached presentation. FAC at ¶ 28.

However, under *Axiom Foods*, the Venrock email fails to establish that RUNLABS Ireland expressly aimed its conduct at any Californians, let alone California as the forum state. In *Axiom Foods*, the email communication was sent to fifty-five recipients with companies in California. 874 F.3d at 1070. Here, the allegedly infringing email was sent to three principals of Venrock, which has a presence in both California and New York. As required, the court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. By that standard, the evidence demonstrates that RUNLABS Ireland did not create minimum contacts with California. The Court lacks information concerning the residence of the three Venrock recipients of the allegedly infringing email, much like how in *Axiom Foods*, the court lacked "information concerning the residence of the 55 recipients and the legal and operational relationships among the 55 recipients and their respective companies." 874 F.3d at 1070. There is no evidence that the three Venrock principals who received the allegedly infringing email are even California residents, as the FAC alleges that Venrock has an office in New York. FAC at ¶ 28. So, as *Axiom Foods* held, "any California contacts [defendant] created by sending a single newsletter to 55 recipients of unknown residence are too attenuated and isolated to support the exercise of jurisdiction." 874 F.3d at 1070 (internal citations and quotation marks omitted). Here, there are even fewer recipients of unknown

15

residence than in *Axiom Foods*: three recipients, as opposed to fifty-five recipients in *Axiom Foods*.

Moreover, according to Marcus' Declaration:

> RUNLABS does not conduct business in the US. It has no officers, directors, or employees in the United States, no operations in the United States, no offices or property in the United States, no customer in the United states, no suppliers in the United States, and no bank accounts in the United States. It is not registered to do business in California, or in any other State. It has no subsidiaries, no parent corporation, no owners, and no affiliates in the United States.

Marcus Decl. at ¶ 7. Marcus' Declaration not distinguish between RUNLABS Ireland and RUNLABS UK. Nevertheless, the fact that both RUNLABS entities do not do business in the United States is unrebutted. In essence, Marcus confirms that RUNLABS has no business ties to the United States. Similarly, in *Axiom Foods*, the fact that the defendant itself "conducts no business in California" supported the *Axiom Foods* court's conclusion that it "can hardly be said that 'California [wa]s the focal point both of the [newsletter] and of the harm suffered,'" 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 287), even though ten of the *Axiom Foods* email newsletter recipients were known to be physically located in California, *id.* at 1070.

Plaintiff argues that "the record is sufficient to support personal jurisdiction based on Defendants' acts of sending promotional materials touting their business and seeking investment within the United States." Opp. at 7. However, Plaintiff's argument misses the mark. Per *Axiom Foods*, "the fact that 144 email addresses belong to [plaintiffs'] actual or potential partners, customers, or suppliers [does not] compel a different result. The foreseeability of injury in a forum is not a sufficient benchmark for exercising personal jurisdiction." 874 F.3d at 1070.

Plaintiff also cites *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002), as an example of when the Ninth Circuit upheld a finding of personal jurisdiction over foreign defendants alleged to have infringed plaintiff's trademark in the song "Barbie Girl." However, *Mattel* is highly distinguishable as the *Mattel* defendant's contact with California, the forum state, was much more extensive than RUNLABS Ireland's contact with California in the instant case. For instance, in *Mattel*, "Defendants entered into cross-licensing agreements and developed a

16

coordinated plan to distribute the Barbie Girl song in the United States (including California), and sent promotional copies of the Barbie Girl single and the *Aquarium* album to the United States (including California)." *Id.* By contrast, here, *one* allegedly infringing email was sent to three individuals whose residences are unknown; RUNLABS Ireland, not RUNLABS UK, was responsible for the allegedly infringing email; no agreements were proposed or entered into; and there was no coordinated plan to distribute any of the allegedly infringing materials to a wider audience in California. Marcus Decl. at ¶ 8 ("These targeted investor communications were distributed on an exceptionally limited basis, and principally in the European Union.").

Moreover, Plaintiff also cites *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1348 (D. Or. 1991), in support of Plaintiff's position. In *Sidco*, the court found there was personal jurisdiction over a defendant who "sent direct mail brochures to almost every travel agent in the State of Oregon." *Id.* Specifically, the defendant sent 378 brochures to Oregon travel agents, whereas there were approximately 405 Oregon travel agents in total. *Id.* However, *Sidco* is distinguishable because the *Sidco* defendant's contacts with Oregon resulted from sending "direct mail brochures to almost every travel agent in the State of Oregon." *Id.* In *Sidco*, defendant distributed "[s]ome 40,000 of these brochures" throughout the United States. *Id.*

By contrast, in the instant case, an exceptionally limited number of emails was sent, principally in the European Union. The one specific email Plaintiff cites was sent to three principals of Venrock, which has offices in California and New York. It is not known whether these three principals are even California residents. These facts stand in sharp contrast to the 378 brochures mailed to travel agents known to be Oregon residents in *Sidco*. The facts of the instant case are more analogous to the Ninth Circuit's 2017 *Axiom* case, in which the Ninth Circuit found that distribution of an email newsletter to 343 email recipients, 55 of whom had companies in California, and 10 of whom were physically located in California, was too tenuous to satisfy the express aiming prong of the *Calder* test.

In sum, because RUNLABS Ireland does not meet the express aiming prong of the *Calder* test, under *Axiom Foods*, the Court cannot exercise personal jurisdiction over RUNLABS Ireland.

17

*See, e.g.*, *Axiom Foods*, 874 F.3d at 1071 n.6 ("Having decided that [plaintiffs] do not meet their burden with respect to the second prong of the purposeful direction test, we need not address the last prong.").

Thus, the Court GRANTS Defendants' motion to dismiss RUNLABS Ireland from this case for lack of personal jurisdiction. Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### b. Specific Jurisdiction over Marcus

As mentioned above, to establish purposeful direction, a plaintiff must satisfy a 3-part test from the United States Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Dole Food*, 303 F.3d at 1111 (citing *Calder*, 465 U.S. 788-89).

The Court finds that analyzing the second prong of the *Calder* test—whether the defendant's act was expressly aimed at the forum state—is dispositive, and thus the Court need not address any of the other prongs because "[f]ailing to sufficiently plead any one of these three elements [from *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert*, 68 F. Supp. 3d at 1163 (citing *Brayton Purcell LLP*, 606 F.3d at 1128-29); *see also Michael*, 65 F. Supp. 3d at 806-07 ("Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction."); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (same).

### i. Express Aiming

The analysis of whether Marcus expressly aimed the emails at California does not differ from the Court's analysis of whether RUNLABS Ireland expressly aimed RUNLABS Ireland's conduct at California. Again, *Axiom Foods* controls the outcome of this Court's express aiming analysis.

Other than pleading that Defendants as a whole (including RUNLABS UK and RUNLABS

18

Ireland) sent an allegedly infringing email to three Venrock principals based in the Palo Alto and New York offices, FAC at ¶ 28, the FAC provides no additional detail as to Marcus' contacts with California, the forum state. Thus, for all the same reasons the Court found no personal jurisdiction over RUNLABS Ireland, the Court finds that there is no personal jurisdiction over Marcus.

For instance, in *Axiom Foods*, the email newsletter that allegedly infringed the *Axiom Foods'* plaintiff's trademarks was sent to fifty-five recipients with companies in California. 874 F.3d at 1070. Here, the allegedly infringing email was sent to three principals of Venrock, which has a presence in both California and New York. Yet Plaintiff does not even know whether the three Venrock principals are residents of California. As *Axiom Foods* held, "any California contacts [defendant] created by sending a single newsletter to 55 recipients of unknown residence are too attenuated and isolated to support the exercise of jurisdiction." 874 F.3d at 1070 (internal citations and quotation marks omitted).

Here, Plaintiff is only able to cite to one email sent to three Venrock principals as evidence of Marcus' alleged contact with California. Plaintiff hypothesizes that "many such communications" were sent to Northern California residents, FAC at ¶ 28, but this is disputed by Marcus' declaration, which states that the email communications "were distributed on an exceptionally limited basis, and principally in the European Union," Marcus Decl. at ¶ 8. "[F]or purposes of personal jurisdiction, we may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander*, 972 F.2d at 262. Thus, the Court does not consider Plaintiff's conjecture that "*many* such" emails were sent to Northern California residents, FAC at ¶ 28, as Marcus' declaration makes clear that the emails were distributed on an "*exceptionally limited basis*," Marcus Decl. at ¶ 8. But had even more emails been sent to residents of the Northern District of California, the *Axiom Foods* court held that ten email recipients known to be located in California can hardly be said to demonstrate that "'California [wa]s the focal point both of the [email newsletter] and of the harm suffered,'" 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 287).

Moreover, there are no allegations that Marcus conducts business in California, which is

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE

1  buttressed by Marcus' Declaration that "RUNLABS does not conduct business in the US." Marcus

2  Decl. at ¶ 7. The Ninth Circuit stressed that sending one newsletter to a maximum of 10 recipients

3  known to be located in California, in a market where the defendant had no sales or clients, "barely

4  connected [the defendant] to California residents, much less to California itself." *Axiom Foods*,

5  874 F.3d at 1071.

6       In sum, Plaintiffs have failed to meet their burden of attributing Marcus' actions to direct

7  aiming at California as the forum state. Thus, the Court GRANTS Defendants' motion to dismiss

8  Marcus from this case for lack of personal jurisdiction. Because granting Plaintiff an additional

9  opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice

10  Defendants, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See*

11  *Leadsinger, Inc.*, 512 F.3d at 532.

12       **B. Request for Judicial Notice**

13       Defendants have requested that the Court take judicial notice of Venrock's responses to

14  RUNLABS Ireland's email and presentation. Reply at 2. Defendants' request for judicial notice is

15  DENIED as moot because the Court does not rely on Venrock's responses in the instant order.

16  **IV.    CONCLUSION**

17       For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss without

18  prejudice for lack of personal jurisdiction.

19       Should Plaintiff elect to file an amended complaint curing the deficiencies identified

20  herein, Plaintiff shall do so within 30 days. Failure to file an amended complaint within 30 days or

21  failure to cure the deficiencies identified in this Order or in Plaintiff's brief will result in dismissal

22  with prejudice of the claims dismissed in this Order. Plaintiff may not add new causes of actions

23  or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil

24  Procedure 15.

25  **IT IS SO ORDERED.**

26

27  Dated: May 1, 2019

28

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE

United States District Court
Northern District of California