UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEXANDRIA REAL ESTATE EQUITIES, INC., | Case No. 18-CV-07517-LHK |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE** |
| v. | |
| RUNLABS (UK) LIMITED, et al., | Re: Dkt. No. 59 |
| Defendants. | |

Plaintiff Alexandria Real Estate Equities, Inc. ("Plaintiff") brings the instant suit against

RUNLABS (UK) Limited ("RUNLABS UK"), RUNLABS (Ireland) Limited ("RUNLABS

Ireland"), and Steven Marcus ("Marcus") (collectively, "Defendants"). The suit primarily

concerns Defendants' allegedly illegal use of Plaintiff's trademark. Before the Court is

Defendants' motion to dismiss the Second Amended Complaint ("SAC").[1] ECF No. 60 ("Mot.").

Having considered the submissions of the parties, the relevant law, and the record in this case, the

---

[1] Defendants' motion to dismiss the SAC exceeds the applicable 25-page limit set forth in the Civil Local Rules. *See* Civ. Loc. R. 7-2(b) (explaining that a motion must consist of "one filed document not exceeding 25 pages in length," including the notice of the motion and the points and authorities in support of the motion). Future briefs that fail to comply with the Civil Local Rules' page limits will be stricken.

Court GRANTS Defendants' motion to dismiss the SAC with prejudice.

# I.    BACKGROUND

## A.  Factual Background

Plaintiff is a publicly traded real estate investment trust ("REIT") and "prominent developer and operator of commercial real estate properties to companies in the academic, scientific, medical, research/development, and technology fields." ECF No. 59 ("SAC") ¶ 2. Plaintiff owns a variety of trademark registrations, including its name ("Alexandria"), its lighthouse logo, and the phrase "landlord of choice." *Id.* ¶ 30.

Defendant RUNLABS UK is a "private limited company established under the laws of the United Kingdom, with its principal place of business . . . [in] London, United Kingdom." *Id.* ¶ 6. Defendant RUNLABS Ireland is a "private limited company established under the laws of Ireland, with its principal place of business . . . [in] Dublin, Ireland." *Id.* ¶ 7. The last defendant, Steven Marcus, is a United States citizen who currently resides in London, United Kingdom. *Id.* ¶ 8. Defendant Steven Marcus is the "Founder and CEO of RUNLABS . . . ." *Id.* Defendant Steven Marcus is related to Plaintiff's founder and chairman, Joel Marcus. *Id.* ¶ 32.

Defendants "advertise collaborative life sciences and technology campuses incorporating turnkey laboratory and office facilities specifically geared for early stage life science and biotech companies and entrepreneurs." *Id.* ¶ 3. Plaintiff alleges that Defendants offer "services identical to those [Plaintiff] has marketed and provided to its clients for decades." *Id.* However, RUNLABS UK and RUNLABS Ireland "are newly formed entities that have not, to date, operated any laboratory facility or conducted any business beyond promoting Defendants' intended services to attract clients and raise funds." *Id.* ¶ 32.

On or around November 27, 2018, Plaintiff became aware that Defendants had allegedly used Plaintiff's name and trademarks in order to promote Defendants' services to investors. *Id.* ¶ 33. Plaintiff points to emails with an attached presentation that were sent to several "principals based in the Palo Alto and New York offices of a prominent venture capital fund" and to several other "prominent investors in Menlo Park and San Francisco." *Id.* Plaintiff cites "three such

United States District Court
Northern District of California

communications." *Id.* According to Plaintiff, one email was sent on November 27, 2018, to three principals of the venture capital firm Venrock, a company with offices in New York and Palo Alto. *Id.* ¶ 12; *id.* at Ex. B; ECF No. 60-1 ("Marcus Decl.") ¶ 10. Two of these three principals are California residents. SAC ¶ 12. The SAC indicates that these two California residents serve on the boards of directors of actual and potential clients of Plaintiff. *Id.* ¶¶ 13, 14.

The second email was sent to three employees of the firm Riverwood Capital Management, based in Menlo Park, California, on an unspecified date. *Id.* ¶ 15. Each of these employees are California residents. *Id.*

The final email was sent on an unspecified date to former Vice President Al Gore at the San Francisco office of the firm Generation Investment Management and to two London-based recipients. *Id.*

In addition to these three communications, Plaintiff also asserts that, "upon information and belief, Defendants sent many similar communications to those in the start-up, life sciences, and technology communities in Northern California in order to attract clients and raise funds." SAC ¶ 33. In a sworn declaration attached to the motion to dismiss the SAC, however, Defendant Marcus argues that the "targeted investor communications were distributed on an exceptionally limited basis, and principally (approximately 90%) in and to the European Union." Marcus Decl. ¶ 8.

Plaintiff alleges that the emails with an attached presentation contain unauthorized uses of Plaintiff's trademarks. SAC ¶ 30. Specifically, Plaintiff alleges that the emails made the following allegedly false or misleading statements, or "similar claims":

- "RUNLABS is creating the world's first and only flexible urban lab platform—providing critical infrastructure and community to life sciences companies . . . ."

- "We are currently raising EUR 50 million growth round for groundbreaking life science projects in major gateway cities—Paris and London—with a clear plan to go global, including the US."

- "RUNLABS is a revolution in life science, sprung from Alexandria (www.are.com

1              – NYSE: ARE), growing the world's first and only network of flexible labs

2              enabling life science breakthroughs."

3       •   "Alexandria [is] on CNBC [and] on Bloomberg."

*Id.* ¶ 37. Moreover, Plaintiff argues that the presentation attached to the emails "is also replete with unauthorized uses of the Alexandria Trademarks, false statements regarding RUNLABS' formation, offering and relationship with Alexandria, and statements misleadingly suggesting an affiliation, sponsorship, or endorsement of RUNLABS by Alexandria. *Id.* ¶ 41. For example, the below slide is from the attached presentation and features "photographs of Alexandria properties and unauthorized references to Alexandria and its registered LANDLORD OF CHOICE trademark." *Id.* ¶ 42.

**RUNLABS** *Mission – 25 years + Evolution*

*Labs 1.0* – self-owned and operated, out of town, 'walled garden'

- Capital inefficient
- Disconnected
- Pre-Alexandria

 

*Labs 2.0* – suburban clusters, Alexandria as 'landlord of choice'

- Improved efficiency
- Clusters forming
- Alexandria's early evolution

 

*Labs 3.0* – urban innovation clusters, concentration = collaboration

- Present day Alexandria RE
- Dominant market leader, core urban cluster markets (US)

 

November 2018 - STRICTLY CONFIDENTIAL – VENROCK     4

In addition to disseminating these emails, Plaintiff claims that in "October 2018, Defendants traveled to this district to raise funds and, on information and belief, to promote their business through misleading statements similar to those in the promotional deck." *Id.* This trip appears to have been taken for at most two days for the purposes of "fundraising for RUNLABS Ireland." *Id.* ¶ 16.

4

Once Plaintiff learned of one of the emails, Plaintiff sent a demand letter to Defendants insisting that they cease using all Alexandria Trademarks and references to Joel Marcus in their commercial communications. *Id.* ¶ 51. Defendants did not respond to the letter, which prompted Plaintiff to bring this lawsuit. *Id.*

### B. Procedural History

On December 13, 2018, Plaintiff initiated suit by filing a complaint. ECF No. 1. On January 8, 2019, Defendants filed a motion to dismiss for lack of jurisdiction. ECF No. 15. Soon after, on January 22, 2019, Plaintiff filed a first amended complaint ("FAC"). ECF No. 21. The Court thus denied as moot Defendants' motion to dismiss the original complaint for lack of jurisdiction. ECF No. 22.

On January 24, 2019, Defendants filed a motion to dismiss the FAC. ECF No. 23. On May 1, 2019, the Court granted the motion to dismiss the FAC without prejudice and held that Plaintiff had failed to establish personal jurisdiction over any of the Defendants. ECF No. 47. Later in the month, and in light of this decision, Magistrate Judge Van Keulen ordered limited discovery "narrowly tailored to the issue of specific personal jurisdiction over Defendants," such as interrogatories and requests for production related to personal jurisdiction. *See* ECF Nos. 49, 52.

On June 13, 2019, Plaintiff filed the SAC. *See* SAC. Defendants filed the instant motion to dismiss the SAC on June 25, 2019. *See* Mot. Plaintiff filed an opposition on July 9, 2019, ECF No. 64 ("Opp."), and Defendants filed a reply on July 16, 2019, ECF No. 65 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a *prima facie* showing that personal

United States District Court
Northern District of California

jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)).

### B. Motion to Dismiss under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted

6

inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.  DISCUSSION

The SAC realleges the same four causes of action in the FAC. These four causes of action are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) false advertising under 15 U.S.C. § 1125(a); and (4) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. SAC ¶¶ 62–96.

The SAC asserts new factual allegations regarding personal jurisdiction over the Defendants. In the SAC, Plaintiff continues to allege that one copy of an infringing email and attached presentation was sent on November 27, 2018, to three principals of the venture capital firm Venrock, a company with offices in New Y.ork and Palo Alto. *Id.* ¶ 12. Two of these three principals are California residents. *Id*. Plaintiff now raises the existence of two new emails, sent on unspecified dates, that distributed Defendants' allegedly infringing presentation deck to a total

of six new recipients.  *Id.* ¶ 15.  Plaintiff alleges that one additional email was sent to three

employees of the firm Riverwood Capital Management based in Menlo Park, California.  *Id.* ¶ 15.

Each of these employees are California residents.  *Id.*  The final email was sent on an unspecified

date to former Vice President Al Gore at the San Francisco office of the firm Generation

Investment Management and to two London-based recipients.  *Id.*  Of these six new recipients,

four appear to be California residents.[2]  *Id.*  Thus, across the three emails, Plaintiff now points to a

total of nine specific individuals who received the allegedly infringing material, six of whom are

California residents.  Plaintiff also provides additional details about the connection between

California and various recipients of these emails and presentations.  *Id.* ¶¶ 12–14.  Finally,

Plaintiff includes a new assertion that two of the Defendants traveled to this district for at most

two days in October 2018 in order to raise funds.  *Id.* ¶ 33.

Notwithstanding these additional factual allegations, Defendants' motion to dismiss the

SAC again asserts that Plaintiff has failed to establish personal jurisdiction.  Mot. at 13–14.

Defendants also argue that Plaintiff's claims are subject to dismissal under Federal Rule of Civil

Procedure 12(b)(6) because extraterritorial application of the Lanham Act is inappropriate here;

Plaintiff has failed to meet the elements of his alleged statutory violations; Plaintiff lacks

prudential standing; and the SAC represents an impermissible "shotgun pleading."  *Id.* at 15–26.

Defendants assert that because the SAC "adds nothing significant and fails to cure the deficiencies

identified in [t]he Court's order," the Court should dismiss the SAC with prejudice.  *Id.* at 1.

The Court agrees with Defendants that the SAC fails to allege personal jurisdiction over

the Defendants, and thus grants Defendants' motion to dismiss with prejudice.  The Court

therefore need not reach Defendants' other arguments raising additional grounds for dismissal of

the SAC.

---

[2] The SAC alleges that former Vice President Al Gore received the email, but it does not
specifically allege that he resides in California.  SAC ¶ 15.  Plaintiff's opposition to the motion to
dismiss the SAC claims that the SAC alleges that Defendants "disseminated three separate
infringing and misleading communications *to 6 persons resident in California*."  Opp. at 7
(emphasis added).  The Court thus assumes for the purposes of this motion that the SAC alleges
that Al Gore resides in California.

## A. Personal Jurisdiction

In Defendants' motion to dismiss Plaintiff's FAC, Defendants argued that Defendants were not subject to either general or specific jurisdiction because Defendants are not based in the United States and because they have not directed their activities at California residents. *Id.* The Court agreed with the Defendants and dismissed Plaintiff's FAC. *See* ECF No. 47.

Defendants raise the same arguments in their motion to dismiss the SAC. In response, Plaintiff does not argue that the Court has general personal jurisdiction over the Defendants. *See* Opp. at 6 ("While Plaintiff believes it may be able to establish general jurisdiction with sufficient discovery, for purposes of opposing this Motion, Plaintiff relies on specific jurisdiction."). Instead, Plaintiff continues to argue that specific jurisdiction over the Defendants is proper. *Id.* Plaintiff argues that Defendants have sufficient minimum contacts with California because Defendants purposefully directed infringing and misleading communications into the forum state, and because Defendants traveled to California to seek investments. *Id.* at 7–10. Plaintiff also argues that Plaintiff's claims arise out of Defendants' contacts with California and that the exercise of specific jurisdiction in this case would not offend traditional notions of fair play and substantial justice. *Id.* at 10–13.

To determine the propriety of asserting personal jurisdiction over a defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemtns, Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (determining scope of California's long-arm statute and examining federal due process requirements). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under

9

state law and federal due process are the same.").  For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant.  *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state.  *See Schwarzenegger*, 374 F.3d at 801 (citation omitted).  If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider "evidence presented in affidavits to assist it in its determination." *Unocal Corp.*, 248 F.3d at 922, *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).  The Court first discusses general jurisdiction, then turns to specific jurisdiction.

### 1. General Jurisdiction

General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state.  *See Schwarzenegger*, 374 F.3d at 801.  "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks omitted).  In the

Court's order granting Defendants' motion to dismiss the FAC, the Court held that Plaintiff had not adequately pleaded facts that showed that Defendants were subject to general personal jurisdiction. Because Plaintiff has not pleaded new facts in the SAC showing that the Defendants are subject to general jurisdiction, the Court's analysis remains largely unchanged.

Courts have rejected the notion that "general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous, and systematic course of business in a state," because "[o]nly in an exceptional case will general jurisdiction be available" other than where a business is incorporated or has its principal place of business. *Martinez*, 764 F.3d at 1070. According to the SAC, RUNLABS Ireland is established under Irish law, and has its principal place of business in Dublin, Ireland. SAC ¶ 7. RUNLABS UK is established under the laws of the United Kingdom, and has its principal place of business in London, United Kingdom. *Id.* at ¶ 6. There are no allegations that either of the two entities have any particular ties to California. Neither RUNLABS Ireland nor RUNLABS UK is incorporated, or has its principal place of business, in California. Indeed, Marcus's declaration in support of the motion to dismiss the SAC states that "[n]either RUNLABS (Ireland) or RUNLABS (UK) conducts any business in the US. Neither has any officers, directors, or employees in the United States, any customers in the United States. Neither has any operations in the United States, any offices or property in the United States, any customers in the United States, any suppliers in the United States, or any bank accounts in the United States." Marcus Decl. ¶ 7. The SAC contains no new facts that could plausibly support general jurisdiction over RUNLABS Ireland or RUNLABS UK. Therefore, RUNLABS Ireland and RUNLABS UK are not subject to the Court's general jurisdiction.

The Court may also exercise general jurisdiction over an individual defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Additionally, general jurisdiction over a nonresident exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. The SAC concedes that Defendant Steven Marcus ("Marcus")

resides in London, United Kingdom.  SAC ¶ 8.  The SAC does not allege that Marcus is physically present in California, nor does it allege that Marcus's activities in California are of a continuous and systematic nature that would support a finding of general jurisdiction.  Indeed, the SAC is silent as to whether Marcus has any ties to California, other than allegedly playing a role in sending the emails and presentation to six California residents and traveling to California on an at most two-day trip to raise funds.  *Id.* at ¶¶ 12–16.  The SAC contains no new facts that could plausibly support general jurisdiction over Marcus.  Accordingly, Marcus is not subject to this Court's general jurisdiction.  None of the Defendants is subject to general jurisdiction.  The Court next turns to specific jurisdiction.

### 2. Specific Jurisdiction

For specific jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that:  (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair.  *Schwarzenegger*, 374 F.3d at 802.  It is the plaintiff's burden to plead allegations satisfying the first two prongs.  *Id.*  If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.*  The Court now considers the specific jurisdiction analysis in light of the facts alleged in the SAC.

The first prong of the Ninth Circuit's three-prong test for personal jurisdiction requires that the defendant either *purposefully directed* its activities at residents of the forum *or purposefully availed* itself of the privilege of doing business in the forum.  This is because under Ninth Circuit law, "we apply different purposeful availment tests to contract and tort cases." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).  Under Ninth Circuit precedents, "the purposeful direction . . . requirement for specific jurisdiction is analyzed in intentional tort cases under the . . . test derived from *Calder v. Jones* . . . ." *Dole Food Co.*, 303 F.3d at 1111.  As a result, the Ninth Circuit applies the purposeful direction test to trademark cases because the Ninth Circuit has found

12

that trademark cases are "akin to a tort case." *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. App'x 502, 509 (9th Cir. 2018); *see also, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1232–33 (N.D. Cal. 2014) ("For trademark infringement actions, the Ninth Circuit requires a showing of purposeful direction."). Likewise, courts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL. *See, e.g.*, *Miller v. S&S Hay Co.*, 2013 WL 3212494, at *2 (E.D. Cal. June 24, 2013) (examining whether defendant "purposefully directs his activities at the forum").

To establish purposeful direction, a plaintiff must satisfy a 3-prong test from the United States Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act must have been expressly aimed at the forum state; and (3) the defendant must have known that the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). "Failing to sufficiently plead any one of these three elements [from *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010)); *see also Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d 797, 806-07 (N.D. Cal. 2014) ("Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction."); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (same).

The Court first considers the 3-prong *Calder* test as applied to the Defendants' allegedly infringing emails with an attached presentation sent to various California residents. The Court then proceeds to consider the test as applied to Defendants' fundraising trip to California in October 2018.

### a. Allegedly Infringing Emails and Presentation

In the FAC, Plaintiff pointed to an email and attached presentation sent by Defendants to

13

three recipients at Venrock on November 27, 2018, which Plaintiff argued supported specific jurisdiction in California. Plaintiff pleads additional facts in the SAC concerning the email and attached presentation. In particular, Plaintiff now points to two additional copies of the email and attached presentation that were disseminated to a total of six additional recipients, four of whom appear to be California residents, on unspecified dates. *See* SAC ¶ 15. Plaintiff also provides additional factual allegations concerning the connections between the original Venrock recipients of the email and Plaintiff's customer base. *See id.* ¶¶ 13, 14. The Court thus considers its specific jurisdiction analysis in light of these new allegations.

> i. Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual, physical act in the real world"). Courts have found that sending an email is an intentional act. *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067, 1069 (9th Cir. 2017) (sending an email newsletter constituted an intentional act).

When the Court granted Defendants' motion to dismiss the FAC, the Court held that Plaintiff had failed to allege that RUNLABS UK engaged in an intentional act. *See* ECF No. 47. However, in the SAC, Plaintiff now specifically alleges that "all three Defendants participated in sending the infringing and misleading email and promotional deck" to potential investors. SAC ¶ 34. In support of this proposition, Plaintiff points to the fact that the telephone number listed in the email circulating the presentation corresponds to RUNLABS UK, while the attached presentation lists the contact information for RUNLABS Ireland. *Id.* Moreover, Plaintiff asserts that the emails and presentation were personally sent by Marcus. *Id.*

Although Plaintiff bears the burden to establish a *prima facie* case that personal jurisdiction exists over the Defendants, "[w]here not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss." *Unocal Corp.*, 248

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE

F.3d at 922.  Defendants appear to argue that RUNLABS Ireland was the "driving force" behind the email and presentation, Mot. at 15, but Defendants do not controvert the allegation that the other two defendants "participated" in disseminating the emails and presentation to potential investors.[3]  Under Ninth Circuit case law, the "threshold of what constitutes an intentional act is relatively low."  *AirWair Internat'l Ltd.*, 73 F. Supp. 3d at 1233.  The Court therefore assumes for the purposes of the instant motion that Defendants each participated in the dissemination of the emails and presentation, which satisfies the intentional act requirement of the *Calder* test.  The Court proceeds to discuss the second prong of the *Calder* test:  whether "the defendant's act was expressly aimed at the forum state."  *Dole Food Co.*, 303 F.3d at 1111.

ii.  Express Aiming

"Express aiming is an ill-defined concept that we have taken to mean 'something more' than 'a foreign act with foreseeable effects in the forum state.'"  *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).  Courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.'"  *Axiom Foods*, 874 F.3d at 1070 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).  "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum."  *Mitchell v. Berwyn Partners, Inc.*, 2018 WL 3328220, at *5 (N.D. Cal. July 6, 2018) (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017)).  "Mere injury to a forum resident is not a sufficient connection to the forum."  *Walden*, 571 U.S. at 278.

*Axiom Foods* involved the Ninth Circuit's application of the United States Supreme Court's *Walden* decision on specific jurisdiction to the email context.  In *Axiom Foods*, the Ninth Circuit considered the distribution of an email newsletter that allegedly violated several

---

[3] Defendants argue that the SAC provides "no evidence (or even allegation) that [RUNLABS UK] had any involvement in the email/deck," Reply at 4, but as outlined above, the SAC does in fact specifically alleges that "all three Defendants participated in sending the infringing and misleading email and promotional deck" and offers as evidence the fact that RUNLABS UK's contact information is included in the cover email.  *Id.*

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE

trademarks to 343 email recipients, 55 of whom had companies in California and 10 of whom were physically located in California. The Ninth Circuit first rejected as too attenuated the fact that 55 recipients had companies in California, particularly where there was no information about the residence of those recipients or the legal or operational relationships between those recipients and their companies. 874 F.3d at 1070. Focusing on the 10 recipients who were physically located in California, the Ninth Circuit held that "[i]t can hardly be said that California was the focal point both of the newsletter and of the harm suffered." *Id.* at 1070–71 (internal quotation marks and alterations omitted). The Ninth Circuit stressed that sending one newsletter to a maximum of 10 recipients located in California, in a market where the defendant had no sales or clients, "barely connected [the defendant] to California residents, much less to California itself." *Id.* at 1071. The *Axiom Foods* court therefore held that the newsletter was insufficient to establish specific jurisdiction in California. *See id.*

In the instant case, *Axiom Foods* controls. The Court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. The evidence demonstrates that the Defendants did not create minimum contacts with California through the limited distribution of the email and presentation. According to the SAC, a total of six recipients of the allegedly infringing email and presentation reside in California. *Id.* ¶¶ 12, 15. However, it remains undisputed that the emails and the presentation "were created in and sent from the European Union," and they were "distributed on an exceptionally limited basis, [] principally (approximately 90%) in and to the European Union." Marcus Decl. ¶ 8. The facts that only six California residents received Defendants' email and that Defendants overwhelmingly focused on other jurisdictions render the Defendants' contacts with California "attenuated" and "isolated." Indeed, the *Axiom Foods* court held that one newsletter sent "to a maximum of ten recipients located in California, in a market where [the defendant] has no sales or clients" was insufficient to establish specific jurisdiction.

Additionally, the fact that the Defendants do no business in the United States remains unrebutted. According to Marcus's Declaration: "Neither RUNLABS (Ireland) or RUNLABS

(UK) conducts any business in the US. Neither has any officers, directors, or employees in the United States. Neither has any operations in the United States, any offices or property in the United States, any customers in the United States, any suppliers in the United States, or any bank accounts in the United States. Neither company is registered to do business in California, or in any other State in the United States. Neither company has any subsidiaries, parent corporation, owner, or affiliate in the United States. RUNLABS has consistently made clear that for the foreseeable future its operations will be in Europe and its services will be offered exclusively in Europe." Marcus Decl. ¶ 7.

Further, Marcus himself has lived in the United Kingdom for more than seven years, where he is a lawful permanent resident. *Id.* ¶ 3. Marcus is married to a European Union national, and Marcus is raising two children in the United Kingdom. *Id.* ¶ 4. Marcus has applied for citizenship in the United Kingdom and Marcus states that he has "no present intention of moving away from the UK, either to the US or elsewhere." *Id.* ¶ 5. Marcus also represents that "[o]ther than occasional visits (fewer than 30 days last year) and the maintenance of a postal address with extended family, [he has] no material ties to the US." *Id.* ¶ 6. The *Axiom Foods* court held that the fact that the defendant itself "conduct[ed] no business in California" provided further support for the *Axiom Foods* court's conclusion that it "can hardly be said that 'California [wa]s the focal point both of the [newsletter] and of the harm suffered,'" 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 287). The same is true here.

Plaintiff continues to allege upon information and belief, as it did in the FAC, that "Defendants sent many similar communications to those in the start-up, life sciences, and technology communities in Northern California in order to attract clients and raise funds." *Id.* ¶ 33. However, this allegation is contradicted by Marcus's sworn declaration that the communications "distributed on an *exceptionally limited basis*, [] *principally (approximately 90%) in and to the European Union*." Marcus Decl. ¶ 8 (emphasis added). "[F]or purposes of personal jurisdiction, we may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enterps., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (quotation

17

omitted); *see also Mavrix Photo, Inc.*, 647 F.3d at 1223 (holding that for purposes of personal jurisdiction, "we may not assume the truth of allegations in a pleading which are contradicted by affidavit"). As with the FAC, this Court therefore need not presume the truth of the allegation that Defendants sent "many" infringing emails to Northern Californian recipients. Instead, the Court's analysis is confined to the three emails with an attached presentation discussed in the SAC. SAC ¶ 28.

In support of its argument that these emails were expressly aimed at California, Plaintiff no longer relies on *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), and *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343 (D. Or. 1991). Instead, Plaintiff now points to only a single case in support of its position: *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc). However, *Bancroft* is inapposite.

In *Bancroft*, the Ninth Circuit considered whether specific jurisdiction existed when the defendant, Augusta National Inc., sent a letter to the domain name registrar of the plaintiff, Bancroft & Masters, Inc., and the plaintiff itself. *Bancroft*, 223 F.3d at 1085. These letters triggered a dispute resolution process concerning the plaintiff's domain name. *Id.* The *Bancroft* plaintiff filed suit in federal district court in California, and the Ninth Circuit concluded that specific jurisdiction existed. *Id.* at 1089. In deciding that the defendant had "expressly aimed" intentional conduct at California by sending a letter to the plaintiff's domain registrar, the *Bancroft* court relied on a theory of "individualized targeting." *Id.* at 1088 ("The letter was expressly aimed at California because it individually targeted [plaintiff], a California corporation doing business almost exclusively in California."). According to the *Bancroft* court, the defendant's knowledge that the plaintiff would be affected by its act of sending the letter was sufficient to produce specific jurisdiction. *Id.*

*Bancroft* is distinguishable for several reasons. First, *Bancroft* predates the United States Supreme Court's *Walden* decision, and *Walden* altered the operative framework for specific

18

jurisdiction. *See Walden*, 571 U.S. at 289 (reversing lower court decision that "knowledge of respondents' 'strong forum connections,'" combined with the conclusion "that respondents suffered foreseeable harm," established specific jurisdiction). Indeed, following *Walden*, the Ninth Circuit specifically rejected the sufficiency of the "individualized targeting" theory alone to establish specific jurisdiction. *Axiom Foods*, 874 F.3d at 1070 ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires."). However, the court in *Bancroft* relied on the individualized targeting theory alone to establish specific jurisdiction. *Bancroft*, 223 F.3d at 1088 ("The letter was expressly aimed at California because it individually targeted [the plaintiff], a California corporation doing business almost exclusively in California."). Thus, the Court declines to follow *Bancroft*.

The Court also declines to follow *Bancroft* because *Bancroft*'s facts are distinguishable. In *Bancroft*, the defendant's conduct consisted solely of sending letters to the plaintiff and the plaintiff's domain registrar. *See id.* at 1087. The sole "focal point" of these letters was the plaintiff and its domain name. *See id.* In the instant case, by contrast, it is undisputed that the allegedly infringing emails and attached presentation were circulated almost exclusively to recipients outside of California and, in fact, outside of the United States altogether. *See* Marcus Decl. ¶ 8. Moreover, unlike in *Bancroft*, the recipients of the letters in this case were all third parties, not Plaintiff itself.

Plaintiff also attempts to underscore the connection between California and two of the Venrock-related California residents who received the email and attached presentation. Plaintiff explains that these two recipients, Camille Samuels and Bryan Roberts, have served on and continue to serve on multiple boards of directors of California-based companies in the life sciences and technology space. SAC ¶¶ 13–14. Plaintiff claims that several of these companies are the current or potential customers of Plaintiff. *Id.* Plaintiff argues that the Defendants targeted these two individuals because of their connection to Plaintiff and knowledge that the two individuals are

"key decision makers at Plaintiff's core customers." *Id.* ¶ 12.

However, the Ninth Circuit has stressed that "the purpose of a party's action is not the lodestar for our jurisdictional determination." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017); *see id.* at 1148 ("Defendants' subjective motivations are not material to the analysis."). Thus, taking Plaintiff's allegation about the Defendants' motivation in sending the email and presentation to be true, the fact that the Defendants included the two recipients because of their relationship with Plaintiff is immaterial. It is similarly not relevant that the inclusion of "key decision makers" made it more likely that Plaintiff would suffer commercial harm because of the emails and presentation. Indeed, the *Axiom Foods* court explained that "[t]he foreseeability of injury in a forum is not a sufficient benchmark for exercising personal jurisdiction." *Axiom Foods*, 874 F.3d at 1070. In *Axiom Foods*, the court squarely rejected the plaintiff's argument that specific jurisdiction should exist because many of the email recipients represented "actual or potential partners, customers, or suppliers." *Id.* Plaintiff's claim that the email and presentation sent by Defendants was sent to "key decision makers at Plaintiff's core customers" represents a variation of this rejected argument.

Accordingly, the Court once again concludes that the dissemination of the allegedly infringing November 2018 emails and presentation does not constitute a tortious action that was "expressly aimed" at California. *Calder*, 465 U.S. at 789. Because of this conclusion, the Court need not consider whether the Defendants' dissemination of the emails and presentation satisfies the remaining requirements of the Ninth Circuit's test for specific jurisdiction. The Court instead proceeds to consider the SAC's new allegation that Defendants traveled to California for a fundraising trip in October 2018.

### b. October 2018 Fundraising Trip

The SAC raises the new allegation that the Defendants traveled to California for the purposes of fundraising in October 2018, which Plaintiff argues also supports the exercise of specific jurisdiction. This allegation appears in the SAC at two points. First, the SAC indicates that "Defendants Marcus and RUNLABS (Ireland) have further admitted in discovery that they

traveled to this district on October 15-16, 2018, ostensibly also to 'raise funds' for RUNLABS (Ireland). This trip occurred within a few weeks of when Defendants sent the promotional deck to recipients in this district, and plainly was part of a broader effort to promote Runlabs' competing business in the heart of the United States life sciences and technology industry." SAC ¶ 16. Later, the SAC alleges that "[i]n October 2018, Defendants traveled to this district to raise funds and, on information and belief, to promote their business through misleading statements similar to those in the promotional deck." *Id.* ¶ 33. These three sentences constitute the entirety of the SAC's allegations concerning the fundraising trip to California. Plaintiff adds no additional information in its opposition to the motion to dismiss the SAC. Instead, it merely quotes two of the foregoing sentences with no further elaboration or discussion. *See* Opp. at 2.

As an initial matter, the Court notes that it is unclear exactly which Defendants the SAC alleges to have participated in this trip. The SAC first asserts that "Defendants Marcus and RUNLABS (Ireland)" participated in the trip, but then goes on to simply assert that "Defendants traveled to this district." *Compare* SAC ¶ 16, *with id.* ¶ 33. Marcus, for his part, declares that he "made a single day trip in 2018 to the United States fundraising for RUNLABS Ireland." Marcus Decl. ¶ 9. To the extent that the SAC asserts that RUNLABS UK was also involved in the fundraising trip, this allegation appears to be contradicted by Marcus's declaration, and the Court need not assume it to be true. *See Alexander*, 972 F.2d at 262 ("[F]or purposes of personal jurisdiction, 'we may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" (quoting *Data Disc, Inc.*, 557 F.2d at 1284)). Accordingly, the Court proceeds to undertake the *Calder* analysis under the assumption that only Marcus and RUNLABS Ireland were involved in the trip to the United States.

i. Intentional Act

As discussed above, the first prong of the *Calder* test asks whether a defendant committed an intentional act, defined as "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co.*, 704 F.3d at 674. The SAC alleges that Marcus and RUNLABS Ireland traveled to California to engage in fundraising. Courts have held that this

21

kind of physical travel constitutes an intentional act under the first prong of the *Calder* test. *See, e.g.*, *Nelson Motivation, Inc. v. Walton Motivation, Inc.*, 2016 WL 4086767, at *4 (C.D. Cal. July 29, 2016) ("Here, Olson allegedly committed several intentional acts. First, he traveled to California to solicit and transact business with Plaintiffs."). Accordingly, the Court finds that the SAC alleges that Marcus and RUNLABS Ireland engaged in an intentional act in traveling to California to engage in fundraising.

            ii.  Express Aiming

The second prong of the *Calder* test requires the Court to determine "whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). The SAC's new allegation concerning Marcus and RUNLABS Ireland's fundraising trip is insufficient to satisfy this prong for several independent reasons.

First, the Ninth Circuit has deemed sporadic visits to a jurisdiction of a similarly brief duration inadequate to establish specific jurisdiction. "Physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden*, 571 U.S. at 284. However, "a defendant's transitory presence will support jurisdiction only if it was meaningful enough to create a substantial connection with the forum State." *Picot*, 780 F.3d at 1213 (internal quotation omitted).

In *Picot*, the plaintiff, a California resident, brought an action in California for declaratory judgment about the existence of a contract concerning the sale of a business venture with the defendant. *Id.* at 1209. The defendant, a former business associate of the plaintiff, was a Michigan resident who denied that the California court had specific jurisdiction over him. *Id.* Plaintiff attempted to rely on the fact that the defendant had traveled to California twice in order to hold meetings with potential clients for the business to support specific jurisdiction. *Id.* at 1210. However, the Ninth Circuit rejected this argument. The Ninth Circuit held that the trips the defendant made did not directly relate to the disputed contract. *Id.* at 1213. The Ninth Circuit also emphasized the fact that the defendant's role during the two trips "was relatively small," and

explained that both visits were each only around two weeks in duration. *Id.* Finally, the Ninth Circuit underscored that "[t]he bulk of [the defendant's] efforts" concerning the business were directed elsewhere. *Id.* In particular, the Ninth Circuit noted that the defendant's work had centered on Michigan, and that the defendant had also engaged in outreach to Mexico and China. *Id.* These facts, the Ninth Circuit explained, made the defendant's two trips to California "'random, fortuitous, or attenuated.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). While *Picot*'s analysis of the defendant's physical trips to California arose in the "purposeful availment" context, the Ninth Circuit has applied *Picot*'s logic to the "purposeful direction" context as well. *See, e.g.*, *Morrill*, 873 F.3d at 1147 (citing *Picot* in the context of purposeful direction analysis); *Gabor v. Deshler*, 2018 WL 2762411 at *9 (N.D. Cal. June 7, 2018) (same).

The facts surrounding Marcus's trip to California resemble the ones that the Ninth Circuit deemed insufficient in *Picot*. While the defendant in *Picot* traveled to California for a total of around four weeks, Marcus is only alleged to have traveled to California for at most two days. Additionally, it is undisputed that, like the defendant in *Picot*, "[t]he bulk of [Marcus's and RUNLABS Irelands'] efforts" concerning fundraising were directed elsewhere. According to Marcus, in the same year the trip to California occurred, Marcus made "several dozen [fundraising] trips to various locations within Europe, and at least two longer trips to Asia" similar to the fundraising trip he made to California. Marcus Decl. ¶ 9. The limited duration and one-off nature of the trip render it insufficient to create the "substantial connection" to California necessary to support specific jurisdiction. *See, e.g.*, *Parnell Pharmaceuticals, Inc. v. Parnell, Inc.*, 2015 WL 5728396 at *6 (N.D. Cal. Sept. 30, 2015) ("Plaintiff's reliance on [Defendant's] single trip to San Francisco on September 19, 2014 is too attenuated to establish personal jurisdiction."); *Farhang v. Indian Inst. of Tech.*, 2011 WL 2669616 at *4 (N.D. Cal. July 7, 2011) (holding that "a brief business meeting with [plaintiff] during travel to California for other purposes" was insufficient to establish personal jurisdiction).

Second, like the plaintiff in *Picot*, Plaintiff in the instant matter does not sufficiently allege

23

that the single fundraising trip to California related to the "challenged conduct" that underpins Plaintiff's causes of action. *See Picot*, 780 F.3d at 1214–15. Indeed, all four of the SAC's causes of action arise from the Defendants' alleged false advertising and the misuse of Alexandria's trademarks. The SAC alleges that the trip to California "plainly was part of a broader effort to promote Runlabs' competing business in the heart of the United States life sciences and technology industry." SAC ¶ 16. However, simply competing in a relevant market does not give rise to a cause of action.

The only allegation of *tortious conduct* related to the fundraising trip comes in a single, unelaborated sentence in the SAC, when Plaintiff declares that Marcus and RUNLABS Ireland made the trip to California, "on information and belief, to promote their business through misleading statements similar to those in the promotional deck." *Id.* ¶ 33. "[C]onclusory allegations are not sufficient to demonstrate that the Court has personal jurisdiction over Defendants." *Rain Design, Inc. v. Spinido, Inc.*, 2018 WL 4904894, at *2 (N.D. Cal. Oct 9, 2018); *see also China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, 2005 WL 1513153, at *1 (explaining that "the court need not assume the truth of mere conclusory allegations" in a motion to dismiss for lack of personal jurisdiction). While Plaintiff avers that Marcus and RUNLABS Ireland made statements that were "similar to those in the promotional deck," it is undisputed that the fundraising trip occurred over a month before the promotional deck was distributed to the Venrock recipients. Moreover, as outlined above, Plaintiff alleges no facts concerning the fundraising trip other than its duration and timing. The SAC does not indicate whether any meetings actually took place during the trip; with whom any possible meetings occurred; what kind of "misleading statements" Marcus and RUNLABS Ireland made during the meetings; and which causes of action these statements support. Plaintiff has not adequately pleaded that the fundraising trip represents *tortious conduct* expressly aimed at the forum state. *See Professional's Choice Sports Medicine Prods., Inc. v. Hegeman*, 2016 WL 1450704, at *4 (S.D. Cal. April 12, 2016) ("[A] plaintiff must point to contacts which demonstrate that the defendant 'expressly aimed its *tortious conduct* at the forum.'" (emphasis altered)); *Gemcap Lending I, LLC v. Crop USA Ins.*

*Agency, Inc.*, 2014 WL 12589333, at *6 (C.D. Cal. Feb. 14, 2014) ("Purposeful direction occurs where a party's 'intentional, and *allegedly tortious*, actions [a]re expressly aimed' at the forum state." (quoting *Calder*, 465 U.S. at 789) (emphasis added)).

Accordingly, the Court concludes that the fundraising trip of Marcus and RUNLABS Ireland to California did not amount to an allegedly tortious action that was "expressly aimed" at California. *Calder*, 465 U.S. at 789. For this reason, the single fundraising trip to California is not sufficient to support specific jurisdiction over Marcus and RUNLABS Ireland in the instant matter. Because of its conclusion, the Court need not consider whether the fundraising trip to California satisfies the remainder of the Ninth Circuit's test for specific jurisdiction.

Thus, the Court lacks specific jurisdiction over Defendants. The Court proceeds to consider whether leave to amend should be granted.

**B. Leave to Amend**

Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires," it is well-established that leave to amend may be denied if the moving party has acted in bad faith, or if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile. *See Leadsinger*, 512 F.3d at 532. The Court previously granted Defendants' motion to dismiss the FAC on the basis of lack of personal jurisdiction, and the Court instructed the Plaintiff that "failure to cure the deficiencies identified in this Order or in Plaintiff's brief will result in dismissal with prejudice of the claims dismissed in this Order." ECF No. 47 at 20. After this dismissal, Plaintiff undertook discovery specifically concerning the issue of personal jurisdiction. *See* ECF No. 52 at 2. Because the SAC still fails to adequately allege the existence of personal jurisdiction over Defendants, the Court concludes that granting further leave to amend would be futile and unduly prejudice the Defendants. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373–74 (affirming a district court's denial of leave to amend where plaintiff had previous opportunities to cure defects). Accordingly, the Court grants Defendants' motion to dismiss with prejudice.

United States District Court
Northern District of California

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the SAC with prejudice.

**IT IS SO ORDERED.**

Dated:   September 5, 2019

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-07517-LHK
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE